UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABBAS ALI,

     *Plaintiff,*                        CASE NO: 12-13008

*v.*                                    DISTRICT JUDGE AVERN COHN
                                        MAGISTRATE JUDGE CHARLES E. BINDER

DELOSH, FICSHER,

     *Defendants.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 11)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

### II.    REPORT

#### A.    Introduction & Procedural History

Plaintiff Abbas Ali is a state prisoner who was convicted of first degree murder in 2000 and who is currently incarcerated at the Richard A. Handlon Correctional Facility in Ionia, Michigan. On July 9, 2012, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that his First Amendment right of access to the courts was denied. (Compl., Doc. 1 at 3.) As defendants, he names officers "Delosh" and "Ficsher," who have been identified as Linda DeLosh and Gloria Fischer.[1]

---

[1] Hereafter, the correct spelling of the defendants' surnames will be used.

On October 16, 2012, Defendants DeLosh and Fischer filed a motion for summary judgment. (Doc. 11.) Plaintiff was notified that he had until November 16, 2012, to respond to the dispositive motion. (Doc. 12.) No response was filed. On November 29, 2012, Plaintiff filed an application for appointment of counsel, asserting that he is "illiterate to the law and English language" and reminding the Court that the complaint stated that another inmate helped him draft his legal documents. (Doc. 13 at 1.)

Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), the motion for summary judgment is ready for Report and Recommendation without oral argument.

**B.     Factual Background**

In September 2011, when Plaintiff was incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, a shake-down of his cell was conducted by the defendants.[2] (Compl. at 4.) Contraband was located in the cell and Plaintiff was ticketed for major misconduct and placed in segregation. Defendants acknowledge that they moved all of Plaintiff's property to the unit office so that it could be inventoried and packed up later by officers on the 3rd shift. (Doc. 11, Br. in Supp. of Mot. at 2.) Plaintiff was issued both a contraband removal slip (Doc. 1 at 7) and a property pack-up slip. (Doc. 11, Ex. 4 at 19.) The property pack-up slip, which lists the more than 100 items removed from Plaintiff's cell, includes one footlocker of legal materials. On September 30, 2011, an administrative hearing was held. Plaintiff admitted that some of the items of contraband were his and argued (sometimes successfully) that other items were wrongfully labeled contraband. (Admin. Hrng. Rept., Doc. 1 at 8.) He was nevertheless found guilty of misconduct. There is no mention of Plaintiff's legal materials in the hearing report.

---

[2]Defendants assert that this occurred on September 13, but Plaintiff contends that it was September 14.

2

On October 18, 2011, Plaintiff was transferred to the Richard A. Handlon Correctional Facility in Ionia, Michigan. More than a month after his transfer, Plaintiff filed a Step I grievance alleging that many items taken from his cell by Defendant Officer DeLosh had not been returned to him. (Grievance No. TCF-11-12-00773-028-E, Doc. 1 at 9 (signed and dated by Plaintiff on 11-29-11).)[3] The grievance did not mention Defendant Officer Fischer. The grievance listed the missing items, such as a purple bandana and a chess set, and stated that Plaintiff was seeking $76 in compensation. (*Id.*) The grievance also stated: "I also lost most importantly, an Affidavit from Witness Hamid Al-Kinani, and [sic] was the subject of Newly Discovered Evidence that I did not stabb [sic] the Victim." (*Id.*) "I was going to use the Affidavit in Filing my MCR 6500 Motion for New Trial. This denied my Right of Access to the Courts . . . ." (*Id.*)

On December 6, 2011, the grievance was "rejected as untimely" by the grievance coordinator at the Thumb Correctional Facility. (Doc. 11, Ex. 4 at 7.) The rejection memorandum explained:

> You stated that the incident took place 9/14/2011. You were transferred from TCF on 10/18/2011, this grievance was received in this office on December 5, 2011 with no explanation for the delay. I would encourage you to familiarize yourself with the grievance policy as it pertains to time limits.

(*Id.*) The grievance was also denied at Step II (Doc. 11, Ex. 4 at 5), and at Step III Plaintiff was informed that the only way to be reimbursed for personal property loss was through filing a claim with the State Administrative Board. (Doc. 11, Ex. 4 at 3.)

---

[3]The following day, November 30, 2011, Plaintiff filed another Step I grievance about the "THEFT/UnLAWFUL TAKING of His Property," this time seeking over four hundred dollars in reimbursement. (Grievance No. TCF-11-12-00774-028E, Doc. 11, Ex. 4 at 13.) This grievance did not mention the missing affidavit that is the basis for Plaintiff's instant lawsuit, and therefore it will not be discussed.

3

On July 9, 2012, Plaintiff filed the instant civil rights action against both officers, alleging that they "participated in going into" his cell where they "took a signed and notarized affidavit." (Compl., Doc. 1 at 3.) Plaintiff asserts that the "theft of said affidavit prevents [him] from filing an adequate motion for relief from judgment" with the state court and, if needed, a writ of habeas corpus. (*Id*. at 4.) Thus, he alleges a violation of his First Amendment right of access to the courts.

Defendants' motion for summary judgment asserts that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit, that Plaintiff has failed to allege an actual injury to his right of access to the courts as required, and that Defendants are entitled to qualified immunity. (Doc. 11.)

### C.     Summary Judgment Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.     Analysis & Conclusion**

**1.     Exhaustion of Administrative Remedies**

Defendants assert that they are entitled to summary judgment because Plaintiff failed to satisfy the exhaustion rule, which is a precondition to filing suit. Prisoner civil rights cases are

subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

To exhaust a claim, a prisoner must proceed through all of the steps of the prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to

6

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R).[4]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within

---

[4] The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

7

fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

I suggest that the record demonstrates that Plaintiff failed to comply with the PLRA's mandatory exhaustion requirement with respect to his claim against Defendant Fischer because he failed to name her in the grievance. (Grievance No. TCF-11-12-00773-028-E, Doc. 1 at 9.) The MDOC grievance policy specifically requires that the "names of all those involved in the issue being grieved are to be included," MDOC PD 03.02.130(R), and here, with regard to Defendant Fischer, Defendant clearly failed to provide "[t]he level of detail necessary" to satisfy the exhaustion requirement. *Jones,* 127 S. Ct. at 922-23. Accordingly, I suggest that Defendant Fischer's motion for summary judgment be granted.

With regard to Defendant DeLosh, I suggest that the record demonstrates that Plaintiff failed to comply with the PLRA's mandatory exhaustion requirement because his grievance naming her was not filed in a timely manner and was therefore rejected. As recently as 2011, the Sixth Circuit confirmed that proper exhaustion in compliance with the rules of the MDOC's grievance policy is a prerequisite to filing suit in federal court:

> The PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires "proper" exhaustion, **which includes compliance with a state agency's timeliness deadlines**. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see also id*. at 93, 126 S. Ct. 2378 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion.").

*Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (emphasis added). I suggest that this is precisely the situation where *Woodford* and *Siggers* apply, and therefore suggest that Defendant DeLosh's motion for summary judgment be granted and the case be dismissed.

8

### 2. Right of Access to the Courts

Alternatively, even if the Court were to consider the claim of denial of access to the courts, I would nevertheless suggest grant of Defendants' motion for summary judgment. In order to state a claim under § 1983, a plaintiff must allege that the defendants deprived him of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980). It is well-established that prisoners have a constitutional right of "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974). In *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), the Supreme Court held that in order to bring a § 1983 action based upon a violation of a prisoner's right of access to the courts, the prisoner must show that he was prejudiced by demonstrating a specific actual injury. *Id.* at 351. The Sixth Circuit, soon after *Lewis* was decided, explained that

> [i]n order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation. Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim.

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In this case, Plaintiff has not alleged or shown anything more than a speculative injury. Indeed, he never asserts that he has even attempted to file a motion for new trial based upon newly discovered evidence, let alone that state action removed his capability to do so. The Supreme Court made it clear that it is when the "capability of filing suit has not been provided" that an inmate demonstrates the violation of this right. *Lewis*, 518 U.S. at 356 (citing *Bounds*, 430 U.S. at 828). Here, where no such allegation or showing has been made, I suggest that the claim fails.

### 3.   Application for Counsel

Finally, I suggest that Plaintiff's late request for appointed counsel to assist him in responding to the motion for summary judgment fails to carry the day. First, *pro se* litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended court deadlines. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Second, although federal district courts have the discretion under 28 U.S.C. § 1915(e)(1) to "request an attorney to represent any person unable to afford counsel," there is no constitutional right to court-appointed counsel in a civil case. *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995). The appointment of counsel is only justified by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). The fact that an inmate is illiterate or speaks a foreign language does not automatically qualify as an exceptional circumstance, because this deficit can be overcome by assistance from prison legal assistants. *See Lewis*, 518 at 356-57. In this case, the help Plaintiff received with his complaint was more than adequate, as the document was well-written and presented his arguments clearly, and there has been no showing that such help was unavailable for preparing a response to the dispositive motion. Furthermore, because the documents of record demonstrate that Plaintiff failed to exhaust his administrative remedies, which is a pre-condition to filing suit, no amount of reasoned argument could undermine the application of the PLRA's exhaustion requirement.

### 4.   Conclusion

For these reasons, I suggest that Defendants' motion for summary judgment be granted and the case be dismissed.

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                           s/ Charles E Binder
                                        CHARLES E. BINDER
Dated: January 23, 2013             United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Kevin Himebaugh, and served by first class mail on Abbas Ali, #316665, Handlon Correctional Facility, l728 Bluewater Highway, Ionia, MI, 48846-8553.

Date:  January 23, 2013             By     s/*Jean L. Broucek*
                                          Case Manager to Magistrate Judge Binder